**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

KEEVA A. WARD,

    Plaintiff,

        v.

NANCY A. BERRYHILL,[1]
Acting Commissioner of Social Security,

    Defendant.

Civil Action No. 14-743
DAR

## MEMORANDUM OPINION

This case was assigned to the undersigned for all purposes. *See* 03/01/2016 Minute Order.[2] Currently pending for determination are Plaintiff's Motion for Judgment of Reversal ("Plaintiff's Motion") (ECF No. 13) and Defendant's Motion for Judgment on the Pleadings and in Opposition to Motion for Judgment of Reversal ("Defendant's Motion") (ECF No. 14). Upon consideration of the motions, the memoranda in support thereof and in opposition thereto, the administrative record ("AR") (ECF No. 10), and the entire record herein, Plaintiff's motion will be granted in part, and Defendant's motion will be denied.

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill, who currently serves as the Acting Commissioner of Social Security for the Social Security Administration, will be substituted for the former Acting Commissioner, Carolyn W. Colvin.

[2] The parties consented to proceed before the undersigned pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. Notices of Consent to Proceed before U.S. Magistrate Judge for All Purposes (ECF Nos. 19 and 20).

**BACKGROUND**

Plaintiff Keeva Ward brings this action seeking judicial review of a final decision by Defendant Acting Commissioner of the Social Security Administration, pursuant to Section 405(g) of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* ("SSA"). Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Judgment of Reversal ("Plaintiff's Memorandum") (ECF No. 13-1) at 1.

*Procedural History*

On July 26, 2011, Plaintiff applied for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"), alleging a disability, which began on September 1, 2009. *Id*. at 2. Her claims were denied initially and upon reconsideration. *Id*.

Thereafter, Plaintiff requested an administrative hearing that took place on November 26, 2012. AR at 15. On December 19, 2012, an Administrative Law Judge ("ALJ") issued his determination, finding that Plaintiff was not disabled. *Id*. at 15-24. On January 17, 2014, Plaintiff's request for review of the ALJ's December 19, 2012 decision was denied. *See* Plaintiff's Memorandum at 2.

*Summary of the ALJ's Ruling*

On December 19, 2012, the ALJ issued a written opinion, wherein he ultimately concluded that Plaintiff (referred to by the ALJ as "the claimant") was "not disabled under section 1614(a)(3)(A) of the Social Security Act." AR at 24. Specifically, the ALJ made the following eleven summary findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2. The claimant has not engaged in substantial gainful activity since September 1, 2009, the alleged onset date.

3. The claimant has the following severe impairments: diabetes mellitus (DM) with peripheral neuropathy; obesity, bipolar disorder; post-traumatic stress disorder (PTSD), generalized anxiety disorder (GAD); and a history of alcohol dependence disorder, currently in remission.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work, as defined in 20 CFR 404.1567(b) and 416.967(b) with the following additional limitations: pushing and pulling are limited to the light level; no foot control operations; no climbing of ladders, ropes or scaffolds; no more than occasional climbing of ramps or stairs, balancing, stooping, crouching, kneeling or crawling; no more than frequent bilateral handling, fingering, and feeling; with no exposure to extreme heat or cold, excessive vibrations, or hazards, such as moving machinery and unprotected heights. The claimant is limited to simple, routine, repetitive tasks, in low-stress job (defined as having no more than occasional decision-making required and no more than occasional changes in the work setting), with no production rate or paced work (such as would be done on an assembly line). The claimant should have no more than occasional interaction with the public or co-workers, and such interaction is limited to superficial interaction (such as brief greeting or exchange of information), and/or interaction that is incidental to the work being performed.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on August 17, 1969, and was 40 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as

       framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 1, 2009, through the date of this decision.

AR at 17-24.

## CONTENTIONS OF THE PARTIES

Plaintiff contends that "reversal and/or remand is the appropriate remedy in this case." Plaintiff's Memorandum at 22. First, Plaintiff avers that "the ALJ's ruling is improper . . . because it fails to properly consider the relevant medical evidence in this case." *Id*. at 7. Plaintiff avers that the ALJ completely omitted any analysis of the opinion of Dr. Michelle Gaskins-Craig, one of Plaintiff's treating physicians. *Id*. at 9.[3] Plaintiff contends that this omission is significant given that Dr. Gaskins-Craig's opinion contrasts greatly with the ALJ's assessment of Plaintiff's residual functional capacity. *Id*. In addition, Plaintiff contends that the ALJ failed to properly credit the medical opinion of one of the state agency physicians, Dr. Anatol Oleynick, in that, "[the ALJ] again fail[ed] to provide any analysis as to why this physician's opinions were not considered credible, or why this opinion was ignored in favor of the less recent RFC evaluations in the file." *Id*. at 10. This opinion also contrasts with the ALJ's ultimate assessment of Plaintiff's residual functional capacity. *Id*. In addition, with regard to her psychological evaluations, Plaintiff argues that the ALJ failed to thoroughly discuss an evaluation from one of her treating physicians. *Id*. at

---

[3] The court observed a discrepancy with regard to the name of one of Plaintiff's treating physicians. After an independent review of the administrative record, the court finds that the correct name of this physician is Dr. Michelle Gaskins-Craig.

13-14. In this evaluation, her treating physician, Dr. Rama Prayaga, opined that Plaintiff had a Global Assessment of Functioning ("GAF") score of 50. *Id.*; *see also* AR at 746-52. Plaintiff claims that the ALJ "neglect[ed] to mention that . . . a GAF of 50 would also be indicative of a psychological impairment severe enough to render an individual 'unable to keep a job,'" as reflected by her medical records. Plaintiff's Memorandum at 13.

Second, Plaintiff contends that "the ALJ erred in not properly considering the testimonial evidence presented at the hearing." *Id.* at 14. In relevant part Plaintiff states:

> In the present case the ALJ has failed to acknowledge several elements of the Claimant's testimony. Although the Claimant testified that she used a cane daily and experienced daily swelling in her extremities . . . these factors and remedial measures were not addressed by the ALJ's decision. Similarly, the ALJ was silent on the Claimant's allegation that she would need to lay down and remain in that postures for several hours during the day due to her pain and postural discomfort . . . as well as her fatigue and difficulty when trying to sleep at night.

*Id.* at 16 (internal citations omitted).

Lastly, Plaintiff avers that the ALJ erred in considering the incorrect onset date with respect to Plaintiff's claims. *Id.* at 17. In support, Plaintiff, relying on *Hinchey v. Barnhart*, Civil Action No. 5:06cv00047, 2007 WL 1047065 (W.D. Va. Apr. 5, 2007), suggests that an ALJ has committed prejudicial error in considering certain factors and happenings that occur outside of a claimant's alleged onset date. *Id.* at 18-19. Plaintiff notes that while the ALJ indicated the correct alleged onset date at the time of the administrative hearing, nevertheless, the ALJ erroneously used her previous onset date in his written findings, thus warranting remand. Plaintiff's Memorandum at 19-20.

In contrast, Defendant avers that the ALJ did not err in his determination of Plaintiff's RFC. Defendant's Memorandum in Support of Her Motion for Judgement of Affirmance and Her

Memorandum in Opposition to Plaintiff's Motion for Judgment of Reversal ("Defendant's Memorandum") (ECF No. 15) at 13. In support, Defendant contends that the ALJ's ultimate conclusion was supported by the vast majority of the medical evidence from Plaintiff's records. *Id*. With regard to Plaintiff's specific contentions, Defendant argues that the opinions of both Dr. Gaskins-Craig and Dr. Oleynick were inconsistent with the record as a whole, which permitted the ALJ to give less weight to those opinions. *Id*. at 15-16. Moreover, Defendant contends that the ALJ did in fact consider both of these opinions fully by indicating that he had considered the totality of Plaintiff's medical records. *Id*. With regard to Plaintiff's GAF score of 50, Defendant argues that the score was an anomaly, as Plaintiff had not taken her medication for several weeks at the time of the evaluation. *Id*. at 16. Defendant contends that a previous evaluation in which Plaintiff had a GAF score of 75 was more consistent with the record as a whole. *Id*. at 16-17.

Defendant contends further that "the ALJ appropriately considered Plaintiff's testimony at the hearing when he evaluated her subjective complaints of pain and other limitations under the regulations 20 C.F.R. §§ 404.1529, 416.929." *Id*. at 17 (internal citation omitted). Defendant argues that the AJL considered: (1) "Plaintiff's statements that she used a cane and experienced swelling in her feet and legs," as noted in the decision; (2) "Plaintiff's testimony regarding her abilities and limitations and her reliance on a home health aide for assistance;" and (3) "Plaintiff's allegations in the context of the medical evidence." *Id*. at 18. Defendant further avers that "[i]n finding that Plaintiff's statements were not fully credible, the ALJ explained that Plaintiff's allegations of disabling conditions were not consistent with the relatively mild to moderate severity reflected in the objective medical findings both prior to and after her alleged onset date of disability." *Id*. (internal citation omitted).

Defendant avers that "[t]he ALJ properly considered Plaintiff's claim during the relevant period from her amended onset date of disability of April 21, 2011, through the date of the ALJ's decision on December 19, 2012." *Id.* at 19 (internal citation omitted). Defendant argues that because the ALJ noted Plaintiff's amendment of her alleged onset date, the two references to her original onset date were obviously inadvertent, *id.* at 19-20, and therefore, Plaintiff was not prejudiced by the ALJ's inadvertent references to her original onset date. *Id.* at 20.

Plaintiff, in her reply, reiterates her arguments in favor of remand, focusing primarily on the ALJ's alleged lack of analysis with regard to her treating physicians. Plaintiff's Response to Defendant's Motion for Judgment on the Pleadings ("Plaintiff's Reply") (ECF No. 16) at 4-7.

**STATUTORY FRAMEWORK**

The Social Security Act established a framework to provide "disability insurance benefits" to eligible individuals and "to provide supplemental security income to individuals who have attained age 65 or are blind or disabled." 42 U.S.C. §§ 423, 1381, 1381a. The statute defines disability for non-blind individuals as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" § 423(d)(1)(A); 20 C.F.R. § 416.905. A disabled individual is eligible for supplemental security income if he or she meets additional statutory requirements concerning "income" and "resources." 42 U.S.C. § 1382(a). The Social Security Administration has promulgated regulations, pursuant to the statue, outlining a five-step process for evaluating disability of adults. *See* 20 C.F.R. §§ 404.1520, 416.920.

First, the agency evaluates whether the claimant is "doing substantial gainful activity"; if so, the agency concludes that the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(I), (b); 416.920(a)(4)(I), (b). If not, the agency determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement . . . ." §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The impairment or combination of impairments is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ." §§ 404.1520(c); 416.920(c). If deemed severe, the agency then determines whether the impairment "meets or equals one of [the] listings[;]" if so, and it meets the duration requirement, the agency concludes that the claimant is disabled. §§ 404.1520(a)(4)(iii), (d); 416.920(a)(4)(iii), (d). The "listing[]" refers to a "listing of impairments" which "describes for each of the major body systems impairments that [the agency] consider to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." § 404.1525(a).

Next, the agency assesses the claimant's "residual functional capacity and . . . past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(iv), (e), (f); 416.920(a)(4)(iv), (e), (f). Residual functional capacity is "the most [an individual] can still do despite" "physical and mental limitations[,]" from all medically determinable impairments, "that affect what [he or she] can do in a work setting." § 404.1545. If the claimant has the residual functional capacity to perform his or her "past relevant work," the claimant is deemed not disabled. § 404.1560(b)(3). Otherwise, the agency assesses the claimant's "residual functional capacity and . . . age, education, and work experience to see if [he or she] can make an adjustment to other work." §§ 404.1520(a)(4)(v), (g); 416.920(a)(4)(v), (g). If the claimant can adjust to other work that "exist[s] in significant numbers in the national economy[,]" the agency determines that the individual is not disabled. § 404.1560(c). However,

if the claimant cannot make such an adjustment, the agency finds that the individual is disabled. §§ 404.1520(g)(1), 416.920(g)(1).

**APPLICABLE STANDARD**

Claimants may seek judicial review in a United States District Court of "any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . ." 42 U.S.C. § 405(g). "The Commissioner's ultimate determination will not be disturbed if it is based on substantial evidence in the record and correctly applies the relevant legal standards." *Butler v. Barnhart*, 353 F.3d 992, 999 (D.C. Cir. 2004) (citations omitted). "In other words '[a] district court's review of the [Social Security Administration's] findings of fact is limited to whether those findings are supported by substantial evidence.'" *Little v. Colvin*, 997 F. Supp. 2d 45, 49 (D.D.C. 2013) (citations omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Butler*, 353 F.3d at 999 (internal quotation marks omitted) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "The test requires more than a scintilla, but can be satisfied by something less than a preponderance of the evidence." *Id.* (citation omitted) (internal quotation marks omitted).

The United States Court of Appeals for the District of Columbia Circuit has observed that "[s]ubstantial-evidence review is highly deferential to the agency fact-finder," *Rossello ex rel. Rossello v. Astrue*, 529 F.3d 1181, 1185 (D.C. Cir. 2008), and that "a reviewing judge must uphold the ALJ's legal 'determination if it . . . is not tainted by an error of law,'" *Isaraphanich v. Comm'r of Soc. Sec. Admin.*, No. 12-0700, 2013 WL 3168141, at *3 (D.D.C. June 21, 2013) (citations omitted); *see also Nicholson v. Soc. Sec. Admin.*, 895 F. Supp. 2d 101, 103 (D.D.C. 2012) (citation omitted) (internal quotation marks and alteration omitted) (noting that the inquiry upon judicial

review "examines whether the ALJ has analyzed all evidence and has sufficiently explained the weight he had given to obviously probative exhibits"); *Little*, 997 F. Supp. 2d at 49 (citations omitted) (noting that the court "is not to review the case 'de novo' or reweigh the evidence"). Moreover, "[t]he ALJ has a duty to explain why they either ignored or rejected contradictory evidence." *Pinkney v. Astrue*, 675 F. Supp. 2d 9, 18 (D.D.C. 2009) (internal citation omitted). "The plaintiff bears the burden of demonstrating that the Commissioner's decision [was] not based on substantial evidence or that incorrect legal standards were applied." *Muldrow v. Astrue*, No. 11-1385, 2012 WL 2877697, at *6 (D.D.C. July 11, 2012) (citation omitted); *see also Garnes v. Colvin*, No. 12-1090, 2013 WL 5297221, at *4 (D.D.C. Aug. 27, 2013).

This Court applies the "treating physician rule[,]" which establishes that a treating physician's report is "binding on the fact-finder unless contradicted by substantial evidence." *Contreras v. Comm'r of Soc. Sec.*, No. 15CV1277TSCDAR, 2017 WL 943900, at *1 (D.D.C. Mar. 9, 2017); *Settles v. Colvin*, 121 F. Supp. 3d 163, 169 (D.D.C. 2015); *Espinosa v. Colvin*, 953 F. Supp. 2d 25, 32 (D.D.C. 2013); *see also* 20 C.F.R. § 404.1527 (c)(2) (stating that when "a treating [physician]'s opinion . . . is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [plaintiff's] case record, [SSA] will give it controlling weight"). "If an ALJ rejects a treating physician's opinion, the ALJ bears the burden of explaining why he has rejected the treating physician's opinion and how the doctor's assessment is contradicted by substantial evidence." *Espinosa*, 953 F. Supp. 2d at 32. "Moreover, with regard to an ALJ's reasoning the Court may only consider the grounds proffered by the agency in its decision for *post hoc* rationalizations do not suffice." *Settles*, 121 F. Supp. 3d at 167-70.

**DISCUSSION**

*Medical Evidence*

Plaintiff has met her burden in demonstrating that the ALJ erred with regard to his analysis of pertinent medical evidence. Dr. Michelle Gaskins-Craig, one of Plaintiff's treating physicians, treated Plaintiff on several occasions between 2011 and 2012. AR at 520-23, 640-44, 649-50. In a report dated August 25, 2011, Dr. Gaskins-Craig opined that Plaintiff's physical ailments warranted significant limitations with regard to weight bearing, as well as standing and walking. AR at 520. Specifically, Dr. Gaskins-Craig stated that Plaintiff could "bear about 10 lbs. of weight and was limited to 30 minutes of standing and walking as a result of her neuropathy." Plaintiff's Memorandum at 9-10; AR at 520. Dr. Gaskins-Craig's assessment was, at least in part, contradictory to the ALJ's ultimate ruling in favor of Defendant. Nonetheless, the ALJ failed to address any of Dr. Gaskins-Craig's assessments in his written decision; indeed, neither her name, nor any express reference to her reports, appears anywhere in the ALJ's decision.

In addition, Dr. Rama Prayaga, a psychiatrist and one of Plaintiff's treating physicians, provided treatment to Plaintiff over the course of several months in 2011. AR at 524-27, 746-52. During one evaluation, Dr. Prayaga determined that Plaintiff had a Global Assessment of Functioning ("GAF") score of 50, as well as post-traumatic stress disorder ("PTSD"), depressive disorder and anxiety. AR at 746-52. Plaintiff highlights that a GAF score of 50 is indicative of serious psychological symptoms, a conclusion in which Defendant concurs. Plaintiff's Memorandum at 13-14; Defendant's Memorandum at 7 n. 5, 6. The ALJ mentions Dr. Prayaga's assessment briefly, however he offers no explanation as to the weight accorded to her opinion. AR at 21.

The Court finds the ALJ's determinations with regard to these medical opinions to be wholly insufficient. The ALJ in (1) failing to mention Dr. Gaskins-Craig's opinions, and (2) providing an incomplete assessment of Dr. Prayaga's opinion, ultimately fell short of his statutory obligations under the SSA. Because the ALJ did not mention the medical opinion of Dr. Gaskins-Craig at all, the court is unable to determine whether the ALJ properly considered all of the requisite medical opinions, as required by the applicable authorities. *See Mitchell-Jenkins v. Colvin*, 86 F. Supp. 3d 5, 10 (D.D.C. 2015) (remanding a social security matter due to ALJ's failure to mention an opinion of a treating physician). Moreover, without a more extensive explanation, the court cannot make a proper determination of the weight, or lack thereof, afforded to Dr. Prayaga's opinion. The ALJ's opinion leaves far too much to interpretation. As Plaintiff's treating physicians, the opinions of Dr. Gaskins-Craig and Dr. Prayaga must receive adequate consideration, in accordance with the applicable statutory authority. *See Butler*, 353 F.3d at 1002 ("The judiciary can scarcely perform its assigned review function, limited though it is, without some indication not only of what evidence was credited, but also whether other evidence was rejected rather than simply ignored.") (internal citation omitted).

In addition, Dr. Anatol Oleynick, a state agency physician, reviewed Plaintiff's medical records for the purpose of providing a consultation to assist the ALJ in making his determination. AR at 735-745. Dr. Oleynick opined, in a manner similar to Dr. Gaskins-Craig, that Plaintiff's physical ailments warranted significant limitations with regard to weight bearing, as well as standing and walking. AR at 738. Moreover, Dr. Oleynick's opinion differed from the opinions of the other state agency physicians, in that he found Plaintiff's ailments to be more severe. AR at 76-85; 89-100. The ALJ, however, mentioned Dr. Oleynick's opinion in his discussion of the state agency evaluations only in passing, and did not discuss Dr. Oleynick's opinion to the extent

that it corroborated other evidence in the record. AR at 21-22. Instead the ALJ gave "great weight" to the opinions of the other unnamed "state agency consultants[,]" notwithstanding his finding that the opinions of "these medical consultants" were "somewhat consistent" with the "objective evidence as a whole." AR at 21-22. The undersigned finds that the ALJ's use of the adjective "somewhat" indicates reservations regarding the issue of consistency; however, the ALJ made no effort to address the extent to which the consultants' opinions were *inconsistent* with the "objective evidence as a whole." Here, the ALJ was obligated "to explain why [he or she] either ignored or rejected contradictory evidence." *Pinkney*, 675 F. Supp. 2d at 18. Given that Dr. Oleynick's consultative opinion was clearly contradictory to the opinions of his fellow state agency physicians, a more detailed discussion was warranted. In the absence of such consideration by the ALJ or sufficient explanation for his decision to accord "great weight" to the consultants' opinions, the undersigned cannot determine whether the decision is supported by substantial evidence.

Defendant, through written submissions, attempts to provide an explanation for the ALJ's rationale, however, as previously stated, *post hoc* rationalizations are impermissible as the court can only consider the grounds actually proffered by the ALJ. *See* Defendant's Memorandum at 15-17. Defendant's arguments can only be characterized as such and, therefore, cannot be entertained.

Thus, the undersigned finds that the ALJ failed to fully consider the medical evidence offered by Plaintiff's treating physicians and Dr. Oleynick, and failed to offer sufficient reasoning for the weight accorded to these opinions. As such, the court will remand this case to the Social Security Administration for re-evaluation of the medical opinions at issue in this opinion.[4]

---

[4] In light of this determination, the court will make no further findings with regard to Plaintiff's additional claims at this time, anticipating that they will be addressed on remand after proper application of the treating physician rule.

**CONCLUSION**

For the reasons set forth herein, Plaintiff's Motion for Judgment of Reversal (ECF No. 13) will be granted in part, Defendant's Motion for Judgment on the Pleadings (ECF No. 14) will be denied, and this case will be remanded to the Social Security Administration for further proceedings consistent with this Memorandum Opinion, by order filed contemporaneously herewith. In all other aspects, Plaintiff's Motion is denied.

Date: March 31, 2017

_____/s/_____
DEBORAH A. ROBINSON
United States Magistrate Judge